**Tammie Lea KIMBERLIN, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–92–454–CR.**

Court of Appeals of Texas, Fort Worth.

May 24, 1994.

Rehearing Denied April 20, 1994.

Elizabeth Horan, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles Mallin, Asst. Chiefs of Appellate Section, Francine Y. Lyles, Asst. Dist. Atty., Fort Worth, for appellee.

Before LATTIMORE, DAY and FARRAR, JJ.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

LATTIMORE, Justice.

In accordance with TEX.R.APP.P. 101, a majority of the justices who participated in the original opinion and the opinion on the State's petition for discretionary review in this case hereby withdraw our opinion and judgment of March 22, 1994, reconsider and modify the same, and substitute the following:

Appellant, Tammie Lea Kimberlin, was convicted by a jury of the offense of aggravated sexual assault of a child. *See* TEX.PENAL CODE ANN. § 22.021(a)(2)(B) (Vernon 1989). The jury assessed punishment at life confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Kimberlin raises three points of error contending that: (1) the evidence was insufficient to support her conviction; (2) she was denied effective assistance of counsel at trial because it was a conflict of interest for the trial counsel to represent both Kimberlin and a co-defendant; and (3) the jury charges were fundamentally defective in failing to include the required definition of reasonable doubt in the application paragraph.

We reverse because the evidence was insufficient to support a conviction for the charged offense, and remand to the trial court for entry of judgment of acquittal.

On May 8, 1990, the victim, A.M., a three-year-old girl, left her house and went to the house of Aaron Brock, who lived two houses away. Appellant Tammie Kimberlin, who is the daughter of Brock, was also living at that address. A.M. frequently visited the Brock home, and A.M.'s family and Brock were friends. At the time of the offense, Brock was seventy-five years old, paralyzed on one side, and had one leg amputated. About twenty minutes after A.M. left, she returned home in a upset state. A.M. made an outcry statement to her mother Lisa M. The next day, Lisa M. recorded in her own hand the substance of this outcry, including several quotations of what the victim actually said. The full text of the written outcry statement is as follows:

5–9–90

[A.M.] came home yesterday & said "Mr. Cliff [Brock] was trying to lick my tutu & I didn't like it. Mr. Cliff said thats all & I can go home.["] After hearing this I asked [A.M.] if anything else ever happened at Mr. Cliff's & she said "One time Mr. Cliff got a big white noodle out of his drawer & put in my tutu & I bleed & I wanted to go home." She then said "one time Tammy got sauce out of the kitchen & put it on my eyes & mouth & tutu & then Tammy licked it off of my eyes & *Mr. Cliff licked my mouth & he licked that sauce on my tutu.*" She got quiet then & *I asked her if anything else ever happened & she said "No, thats all."* /s/Lisa M. (emphasis added)

When Lisa M. referred to her daughter's "tutu" or "toto," she was indicating her vagina. This written outcry statement was admitted into evidence, and inspected by the jury during its deliberations.

In the State's Notice of Intent to Use Outcry Statement, the following disclosure was made:

On May 9, 1990, the injured person told Lisa [M.] that the co-defendant, Aaron Cliff Brock, Jr., tried to lick the injured person's "tutu;" that on a different occasion the co-defendant took a white "noodle" from the drawer and put it into the injured person's "tutu;" and that on another occasion the defendant, Tammie Lea Kimberlin, got sauce from the kitchen and put it on the injured person's eyes, mouth, and "tutu;" then licked the sauce off the injured person's eyes *while the co-defendant licked the sauce off of the injured person's mouth and "tutu."*

At the trial, two and one half years after the offense occurred, Lisa M. told a different version of the outcry. Before the jury, Lisa M. testified that:

She came in and she said that Mr. Cliff tried to lick her toto and that she didn't like it. And I was kind of upset at the time, and I asked her if anything else had happened and she said also that at one time Tammie went to the frigerator and got sauce and put it on her eyes and her mouth and her toto and that *Mr. Cliff and Tammie licked the sauce off her eyes and mouth and toto,* and that one time Mr. Cliff got a big, white noodle out of the drawer and put it in her toto and it made her bleed and she hurt.

A videotaped interview was made the day after the offense. In the first thirteen minutes, A.M. denied that anything had happened. At that point, a fifteen minute break occurred. When the camera was restarted, A.M. stated that "They put—Mr. Cliff [Brock] put a big noodle in my body [pointing to her genital area], and they made me bleed, and then they put sauce in my eyes and sauce in my _____ [pointing to mouth], and we danced and we danced and he made me fall." When asked if anyone else was with Mr. Cliff, A.M. responded "Tammie." In court, A.M. first testified that Tammie was not present when Mr. Cliff used the "noodle," but later stated that Tammie was present when Mr. Cliff tried to insert the "noodle" in the victim's vagina. A.M. testified as follows concerning the sauce incident:

Q. ... Can you show me with the doll what Tammie did to [A.M.]?

A. She got it out of the fridge.

Q. Got it out of the fridge?

A. [Nods head.]

Q. What did she get out of the fridge?

A. Sauce.

Q. What color was the sauce?

A. Red.

Q. With the doll can you, please, show the jurors where she put that sauce?

A. [Witness points.]

Q. Are you pointing to the eye?

A. Yes.

Q. Did she put it anyplace else?

A. No.

Q. How did it feel when she put it in your eye?

A. It burned.

Q. Was Mr. Cliff there when she did that?

A. Yes.

Q. And after she did that, after she put the sauce in your eye, what did you do?

A. I wiped it out.

The medical examination revealed that the victim had Chlamydia, a common sexually transmitted disease which often is asymptomatic, that the victim's hymen was intact, and that the vaginal examination was normal, showing no physical signs of penetration. There was testimony that Kimberlin had Chlamydia about a year before the charged offense, that the disease was then treated, and that co-defendant Brock had previously had a sexually transmitted disease. There was no testimony that Kimberlin or Brock had Chlamydia at the time of the offense. A doctor testified that the disease could be contracted from the dildo if it had recently (within a few hours) been used by an infected person. It can also be transmitted orally.

The indictment for Kimberlin lists three counts: contact between Kimberlin's mouth and A.M.'s sexual organ, penetration of A.M.'s sexual organ with a sexual device, and touching of A.M.'s sexual organ. *However, the jury charge only includes the oral contact count. There was no charge on the law of parties given.* Thus, Kimberlin could only be convicted if the jury found beyond a reasonable doubt that Kimberlin herself had oral contact with A.M.'s sexual organ. Kimberlin and co-defendant Brock were tried together, and were represented by the same counsel, who made no attempt to distinguish between the alleged individual actions of the defendants, because their combined defense was that the alleged offense was fictional, and made up by the parents of the victim to avoid a debt owed to Brock.

■ In her first point of error, Kimberlin asserts that the evidence was insufficient to support the appellant's conviction. In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex. Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. *See Urbano v. State,* 837 S.W.2d 114, 115 (Tex.Crim.App.1992); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Urbano,* 837 S.W.2d at 115–16; *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App. 1991). The standard for review is the same for direct and circumstantial evidence cases. *Geesa v. State,* 820 S.W.2d 154, 158–62 (Tex. Crim.App.1991).

■ Hearsay testimony of "outcry" statements made by a sex offense victim twelve years of age or under to an adult are admissible where the State complies with the statutory predicate. TEX.CODE CRIM.PROC. ANN. art. 38.072 (Vernon Supp.1994); *Dorado v. State,* 843 S.W.2d 37, 38 (Tex.Crim.App. 1992) (per curiam). A child victim's outcry statement alone can be sufficient to sustain a conviction for aggravated sexual assault. *Rodriguez v. State,* 819 S.W.2d 871, 873 (Tex.

Crim.App.1991). There is no requirement that properly admitted outcry testimony be corroborated or substantiated by the victim or independent evidence. *Id.* at 874.

■ A detailed review of the evidence indicates that there is no evidence supporting a conviction of Kimberlin for oral contact of A.M.'s sexual organ. A.M.'s testimony in court did not support the oral contact charge against Kimberlin. A.M. testified in court that Kimberlin put sauce in her eye only, and that A.M. wiped it out. There is no mention of oral contact by either defendant in this testimony. Neither does the videotape of the victim interview support the oral contact charge. A.M. there stated that Kimberlin put sauce in her eyes and mouth, but makes no mention of oral contact of the victim's sexual organ. While the State did show that the victim had a sexually transmitted disease, it did not link this evidence to the defendants by showing that either had the same disease at the time of the offense.

■ The State apparently admits that none of the above evidence supports the conviction. Rather, the State argues that the in-court outcry testimony of Lisa M. is some evidence of Kimberlin's guilt of the oral-genital aggravated sexual assault charge. The State was required to prove that Kimberlin's mouth contacted the sexual organ of the victim. Because of the lack of a party charge, it was not sufficient to prove only that Kimberlin was present or assisted when the co-defendant had oral contact with the victim. According to the written outcry statement, Kimberlin put sauce on the victim's eyes, mouth, and "tutu," and then licked the sauce off of her eyes. The *co-defendant* was alleged in the written statement to have licked the "sauce" off the victim's mouth and "tutu," and on a separate occasion, to have used a dildo on the victim. Thus, the written outcry, which provides direct quotations of the victim's statement, provides no evidence supporting the conviction. The outcry witness's testimony in court, which was not a direct quotation but rather the mother's own summation of the victim's statements, grouped the two defendants' individual actions together, by stating that Kimberlin and the co-defendant licked the

sauce off of the victim's eyes, mouth, and sexual organ. This ambiguous statement does not necessarily mean that both Kimberlin and the co-defendant had oral contact with each of the listed locations. In fact, Lisa M.'s specific written statement, taken the day after the offense, directly impeaches the part of her later general oral statement that implicates Kimberlin personally. The State had the burden to prove, under the court's charge submitted to the jury, that *Kimberlin* had oral contact with the victim's sexual organ. With the outcry statement alone, the State has not proven an essential element of the offense beyond a reasonable doubt. Considering all of the outcry evidence, a rational jury could only conclude that only the co-defendant, and not Kimberlin, had oral contact with the victim.

After considering all of the evidence, including all of the outcry evidence, we hold that there was insufficient evidence for any rational jury to find beyond a reasonable doubt that Kimberlin herself had oral contact with the sexual organ of A.M., and thus to convict Kimberlin of the charged offense.

In so holding, we acknowledge the holdings of the court of criminal appeals in *Rodriguez,* 819 S.W.2d at 873, and *Villalon v. State,* 791 S.W.2d 130 (Tex.Crim.App.1990), but find them factually distinguishable from the case at bar. In *Rodriguez,* the outcry testimony was improperly admitted at trial because the statutory requirements of section 38.072 were not met. The jury convicted the defendant, but the court of appeals reversed, holding that improperly admitted outcry testimony would not be considered for the truth of the matter asserted, but only as evidence that an outcry occurred. Thus, the substance of the outcry was not considered in the sufficiency review. The court of criminal appeals reversed the court of appeals, holding that even improperly admitted evidence must be considered in a sufficiency review. In *Villalon,* the court of appeals found the outcry testimony properly admitted, but judged it unreliable and without probative value, because it was contradicted by the victim's testimony. The court of criminal appeals reversed the court of appeals, holding that the outcry testimony must be consid-

ered in a light most favorable to the verdict, even if contradicted by other testimony.

Here, our holding is *not* based on the fact that other testimony conflicts with the outcry statement, as it was in *Villalon.* The determinative question is what the *victim's* outcry statement actually was, looking only at the evidence, both written and oral, of the outcry. We are not comparing the outcry evidence to the other evidence. Lisa M. testified that she wrote the written outcry statement admitted into evidence, and in so testifying, did not retract or explain that written statement, so as to give more credence to one version of the outcry over the other. By way of analogy, consider a murder trial where the only evidence is the testimony of one witness. That witness testifies both that: (1) the defendant did murder the victim, and (2) the defendant did not murder the victim. No explanation of, or choice between, the inconsistent testimony is made. Are we to confirm the jury's apparent coin-flip decision, when any rational trier of fact could not have believed one version of the story over the other *beyond a reasonable doubt?* The case here is even stronger for reversal than this hypothetical. The written version of the outcry, recorded the day after the victim's statement, and purporting to quote the exact words of the victim, cannot rationally be given less weight than a general oral statement made two and one half years after the event. It is clear that this case was tried on the theory that Kimberlin was a party to the co-defendant's oral-genital aggravated sexual assault, and any rational jury could have found her guilty on that basis beyond a reasonable doubt. Our case law prohibits her conviction as a party without the requisite law of parties charge. An oversight was apparently made, and this charge was not given. If we held that the oral testimony of the outcry witness, by itself, was sufficient to affirm the conviction, it would be tantamount to holding that a party to the charged offense could be found guilty without a law of parties charge to support that conviction. Point of error one is sustained.

Because we hold that the evidence was insufficient to support a conviction on the charged offense, we do not address points of error two and three.

The judgment of the trial court is reversed, and remanded for entry of judgment of acquittal.