COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 02-05-414-CR

ANDREW FRANCIS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)
------------

Appellant Andrew Francis appeals his conviction for two counts of aggravated sexual assault of a child and two counts of indecency with a child by contact as a repeat felony offender.  In three points, he complains that the evidence is legally and factually insufficient to support his conviction and that the trial court abused its discretion by refusing to permit him to impeach the credibility of a hearsay declarant.  We affirm. 

In his first two points, appellant contends that the evidence is legally and factually insufficient to support his conviction because S.R., the victim, did not identify him as the person who committed the offense or testify that she had been assaulted.  Appellant also asserts that the evidence is factually insufficient to support his conviction because S.R.’s testimony conflicted with that of the State’s other witnesses.

The following evidence of appellant’s identity as the person who committed the offense was presented to the jury at the guilt-innocence phase of the trial:

On the evening of March 29, 2003, Helen R., appellant’s wife and S.R.’s grandmother, 
was getting ready for work in the bathroom of her apartment when she heard S.R. in the living room tell appellant to “stop.”  S.R. asked Helen not to go to work and told her that she did not want to stay in the apartment alone with appellant because he had touched her.  When Helen confronted appellant about what S.R. had said, he denied touching S.R. According to Helen, appellant then told S.R., “You know this is not true.  I didn’t touch you,” to which S.R. responded, “You did.”  S.R. was twelve years old at the time. 

Because Helen did not want to leave S.R. at her apartment alone with appellant, she took S.R. to her brother’s house and left her there for the night.  By the time Helen returned to the apartment, appellant had taken some of his personal belongings and had gone to live with his cousin because he did not want to remain at the apartment after S.R. had accused him of touching her.   The next day, Helen and S.R.’s mother,
 Yolanda T., took S.R. to Cook Children’s Hospital.  While at the hospital, they all met with Officer Rockney Malone of the Fort Worth Police Department.  While the doctors were examining S.R., Helen told Officer Malone that she had heard S.R. screaming from another room for appellant not to touch her and that S.R. told her that appellant had been raping her and touching her.

At trial, S.R. identified appellant as her grandfather, acknowledged that he was the only person in the courtroom wearing a pink shirt, and testified that she was afraid of the person in the pink shirt.  S.R. also said that the person in the pink shirt had touched her “a lot” in places where “it is not okay for people to touch,” and that it happened in her grandmother’s apartment.  She also stated that she had seen the “private parts” of the person in the pink shirt. 

The following evidence regarding S.R.’s assault was also presented to the jury:

S.R. testified that the same person she identified earlier, the person in the pink shirt, put something in her body more than one time which “felt bad,” and that he touched her with his “private parts,” but she later said that no one had touched her on the inside of her body.
  Although S.R. could not remember the last time the person had touched her, or how old she was when he first touched her, she did recall that he touched her when she was twelve years old and younger.  S.R. further stated that “something” happened when she was at Helen’s apartment, and that she told Helen, the nurse at the hospital, and the CPS caseworker the truth about what had happened.  

Araceli Desmarais, a sexual assault nurse at Cook Children’s Hospital, testified that Helen told her that she brought S.R. to the hospital because on the previous night, S.R. “started screaming, ‘Don’t leave me here.  Don’t leave me here.  He’s raping me.’”  Desmarais testified S.R. told her she did not want to be left alone with appellant because he had been raping her; that “he touches on [her] everywhere”; and that appellant had been “putting his private in her private,” “taking her clothes off,” “putting his private in her bottom,” and “putting his mouth on her breasts and touching her breasts both under and on top of her clothes.”  When Desmarais asked S.R. if “anything c[a]me out of his pee-pee,” Desmarais said that S.R. “described stuff coming out and getting in her vagina and in her rectum.”  In addition, when Desmarais asked S.R. “if he put any lubrication on there . . . . like Vaseline or oil or anything like that,” S.R. responded that “he put grease.”

Desmarais testified that S.R. told her that the most recent time appellant had “touched” her was a few days before she told Helen and that S.R. “thought she was about six or seven the first time.”  When Desmarais asked S.R. if appellant had “penetrated her genitalia and her anus” the last time he had touched her, S.R. said that he did, but Desmarais stated that S.R. “denied ejaculation.”  According to Desmarais, S.R. explained that she did not tell anyone because appellant would “hit her if she told.” 

After Desmarais finished interviewing S.R., she physically examined her. S.R. had a normal total “head-to-toe” assessment and genital assessment, meaning that there were no tears, scars, or abrasions to the area.  Desmarais explained that these results were consistent with the events that S.R. reported because the tissue in that area heals very quickly and scars very rarely.  She also explained that the use of lubrication would make evidence of an injury less likely because it prevents the friction that can cause injury.  She testified that it is rare to find anal injuries because the anus is used to being stretched.  She further explained that it is not uncommon for there to be no evidence of an injury in these types of cases.  

Officer Deven Pitt, the lead detective assigned to the case, testified that a CPS caseworker provided him with a videotape of an interview that she conducted with S.R. on April 8, 2003.  On the video, S.R. stated that she had been assaulted over forty-five times by appellant over a six-year period.  Officer Pitt determined that the information S.R. gave during the interview was consistent with what she had reported to Helen and Desmarais.  
  

Applying the appropriate standards of review to the evidence in this case,
(footnote: 2) we hold that the evidence is legally and factually sufficient to establish appellant’s identity as the person who committed the offense and that S.R. was, in fact, assaulted.
(footnote: 3)   We must give wide latitude to S.R.’s testimony describing what happened to her; her testimony need not be precise, and she is not expected to express herself with the same level of sophistication as an adult.
(footnote: 4)  The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault.
(footnote: 5)  Furthermore, a child victim's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault.
(footnote: 6) 
 To the extent that S.R.’s testimony conflicted with that of the State’s other witnesses because S.R. vacillated regarding whether anyone had touched her on the inside of her body, we must defer to the jury’s determinations regarding weight and credibility of the evidence.
(footnote: 7) 

We overrule appellant’s first and second points. 
  

In his third point, appellant contends that the trial court abused its discretion by denying his request to impeach the credibility of Yolanda, a hearsay declarant, whose statements were allegedly admitted through Desmarais’s testimony.

We review the trial court's ruling regarding the admission or exclusion of evidence under an abuse of discretion standard.
(footnote: 8)  We will not disturb the ruling on appeal if it is within the zone of reasonable disagreement.
(footnote: 9)  If the trial court's decision was correct on any applicable theory of law, we will sustain the ruling.
(footnote: 10)
 After reviewing the record, we have not identified any hearsay statement made by Yolanda that was admitted through Desmarais’s testimony.  Desmarais simply stated that she received S.R.’s medical history from Yolanda and did not testify as to anything Yolanda told her.  Because Yolanda’s alleged hearsay statements were not admitted through Desmarais’s testimony, the trial court did not abuse its discretion by denying appellant’s request to introduce evidence to impeach Yolanda under rule 806.
(footnote: 11)  We overrule appellant’s third point.

Having overruled all of appellant’s points, we affirm the trial court’s judgment. 

PER CURIAM

PANEL F:  CAYCE, C.J., HOLMAN and GARDNER, JJ.

DO NOT PUBLISH 

Tex. R. App. P.
 47.2(b)

DELIVERED:  MARCH 15, 2007 

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See 
Watson v. State
, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App. 2006) (setting out the factual sufficiency standard of review);
 Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004) (setting out the legal sufficiency standard of review)
.

3:
See 
Tex. Penal Code Ann.
 §§ 21.11, 22.021 (Vernon 2006) (providing the elements for aggravated sexual assault and indecency with a child). 

4:
See Villalon v. State
, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). 

5:
Tear v. State
, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd), 
cert. denied
, 538 U.S. 963 (
2003).

6:
Id.
;
 
Kimberlin v. State
, 877 S.W.2d 828, 831 (Tex. App.—Fort Worth 1994, pet. ref'd) (citing 
Rodriguez v. State
, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991)).

7:
See Hanks v. State
, 137 S.W.3d 668, 671 (Tex. Crim. App. 2004); 
Cain v. State
, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997) (both noting that the jury is sole trier of facts and judge of credibility).

8:
Weatherred v. State
, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

9:
Id.

10:
Prystash v. State
, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1102 (2000); 
Garza v. State
, 996 S.W.2d 276, 280 (Tex. App.—Dallas 1999, pet. ref'd).

11:
See 
Tex. R. Evid.
 806 (providing the method to impeach the credibility of a hearsay declarant).