COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                       NO.
02-05-414-CR

 

 

ANDREW FRANCIS                                                              APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

MEMORANDUM OPINION[1]

                                              ------------

Appellant Andrew Francis
appeals his conviction for two counts of aggravated sexual assault of a child
and two counts of indecency with a child by contact as a repeat felony
offender.  In three points, he complains
that the evidence is legally and factually insufficient to support his
conviction and that the trial court abused its discretion by refusing to permit
him to impeach the credibility of a hearsay declarant.  We affirm.








In his first two points,
appellant contends that the evidence is legally and factually insufficient to
support his conviction because S.R., the victim, did not identify him as the
person who committed the offense or testify that she had been assaulted.  Appellant also asserts that the evidence is
factually insufficient to support his conviction because S.R.=s testimony conflicted with that of the State=s other witnesses.

The following evidence of
appellant=s identity
as the person who committed the offense was presented to the jury at the
guilt-innocence phase of the trial:

On the evening of March 29,
2003, Helen R., appellant=s wife and
S.R.=s grandmother, was getting ready for work in the bathroom of her
apartment when she heard S.R. in the living room tell appellant to Astop.@  S.R. asked Helen not to go to work and told
her that she did not want to stay in the apartment alone with appellant because
he had touched her.  When Helen confronted
appellant about what S.R. had said, he denied touching S.R.  According to Helen, appellant then told S.R.,
AYou know this is not true.  I
didn=t touch you,@ to which
S.R. responded, AYou did.@  S.R. was twelve years old at
the time. 








Because Helen did not want to
leave S.R. at her apartment alone with appellant, she took S.R. to her brother=s house and left her there for the night.  By the time Helen returned to the apartment,
appellant had taken some of his personal belongings and had gone to live with
his cousin because he did not want to remain at the apartment after S.R. had
accused him of touching her.      The next day, Helen and S.R.=s mother, Yolanda T., took S.R. to Cook Children=s Hospital.  While at the
hospital, they all met with Officer Rockney Malone of the Fort Worth Police
Department.  While the doctors were
examining S.R., Helen told Officer Malone that she had heard S.R. screaming
from another room for appellant not to touch her and that S.R. told her that
appellant had been raping her and touching her.

At trial, S.R. identified
appellant as her grandfather, acknowledged that he was the only person in the
courtroom wearing a pink shirt, and testified that she was afraid of the person
in the pink shirt.  S.R. also said that
the person in the pink shirt had touched her Aa lot@ in places
where Ait is not okay for people to touch,@ and that it happened in her grandmother=s apartment.  She also stated
that she had seen the Aprivate
parts@ of the person in the pink shirt.

The following evidence
regarding S.R.=s assault
was also presented to the jury:








S.R. testified that the same
person she identified earlier, the person in the pink shirt, put something in
her body more than one time which Afelt bad,@ and that he
touched her with his Aprivate
parts,@ but she later said that no one had touched her on the inside of her
body.  Although S.R. could not remember
the last time the person had touched her, or how old she was when he first
touched her, she did recall that he touched her when she was twelve years old
and younger.  S.R. further stated that Asomething@ happened
when she was at Helen=s apartment,
and that she told Helen, the nurse at the hospital, and the CPS caseworker the
truth about what had happened.  

Araceli Desmarais, a sexual
assault nurse at Cook Children=s Hospital, testified that Helen told her that she brought S.R. to the
hospital because on the previous night, S.R. Astarted screaming, >Don=t leave me
here.  Don=t leave me here.  He=s raping me.=@  Desmarais testified S.R. told
her she did not want to be left alone with appellant because he had been raping
her; that Ahe touches
on [her] everywhere@; and that
appellant had been Aputting his
private in her private,@ Ataking her clothes off,@ Aputting his
private in her bottom,@ and Aputting his mouth on her breasts and touching her breasts both under
and on top of her clothes.@  When Desmarais asked S.R. if Aanything c[a]me out of his pee-pee,@ Desmarais said that S.R. Adescribed stuff coming out and getting in her vagina and in her
rectum.@  In addition, when Desmarais
asked S.R. Aif he put
any lubrication on there . . . . like Vaseline or oil or anything like that,@ S.R. responded that Ahe put grease.@








Desmarais testified that S.R.
told her that the most recent time appellant had Atouched@ her was a
few days before she told Helen and that S.R. Athought she was about six or seven the first time.@  When Desmarais asked S.R. if
appellant had Apenetrated
her genitalia and her anus@ the last time he had touched her, S.R. said that he did, but
Desmarais stated that S.R. Adenied ejaculation.@  According to Desmarais, S.R.
explained that she did not tell anyone because appellant would Ahit her if she told.@ 

After Desmarais finished
interviewing S.R., she physically examined her. S.R. had a normal total Ahead-to-toe@ assessment
and genital assessment, meaning that there were no tears, scars, or abrasions
to the area.  Desmarais explained that
these results were consistent with the events that S.R. reported because the
tissue in that area heals very quickly and scars very rarely.  She also explained that the use of
lubrication would make evidence of an injury less likely because it prevents
the friction that can cause injury.  She
testified that it is rare to find anal injuries because the anus is used to
being stretched.  She further explained
that it is not uncommon for there to be no evidence of an injury in these types
of cases.  








Officer Deven Pitt, the lead
detective assigned to the case, testified that a CPS caseworker provided him
with a videotape of an interview that she conducted with S.R. on April 8,
2003.  On the video, S.R. stated that she
had been assaulted over forty-five times by appellant over a six-year
period.  Officer Pitt determined that the
information S.R. gave during the interview was consistent with what she had
reported to Helen and Desmarais.    








Applying the appropriate
standards of review to the evidence in this case,[2]
we hold that the evidence is legally and factually sufficient to establish
appellant=s identity
as the person who committed the offense and that S.R. was, in fact, assaulted.[3]   We must give wide latitude to S.R.=s testimony describing what happened to her; her testimony need not be
precise, and she is not expected to express herself with the same level of
sophistication as an adult.[4]  The testimony of a child victim alone is
sufficient to support a conviction for aggravated sexual assault.[5]  Furthermore, a child victim's outcry
statement alone can be sufficient to support a conviction for aggravated sexual
assault.[6]  To the extent that S.R.=s testimony conflicted with that of the State=s other witnesses because S.R. vacillated regarding whether anyone had
touched her on the inside of her body, we must defer to the jury=s determinations regarding weight and credibility of the evidence.[7]


We overrule appellant=s first and second points.   

In his third point, appellant
contends that the trial court abused its discretion by denying his request to
impeach the credibility of Yolanda, a hearsay declarant, whose statements were
allegedly admitted through Desmarais=s testimony.








We review the trial court's
ruling regarding the admission or exclusion of evidence under an abuse of
discretion standard.[8]  We will not disturb the ruling on appeal if
it is within the zone of reasonable disagreement.[9]  If the trial court's decision was correct on
any applicable theory of law, we will sustain the ruling.[10]

After reviewing the record,
we have not identified any hearsay statement made by Yolanda that was admitted
through Desmarais=s
testimony.  Desmarais simply stated that
she received S.R.=s medical
history from Yolanda and did not testify as to anything Yolanda told her.  Because Yolanda=s alleged hearsay statements were not admitted through Desmarais=s testimony, the trial court did not abuse its discretion by denying
appellant=s request to
introduce evidence to impeach Yolanda under rule 806.[11]  We overrule appellant=s third point.

Having overruled all of
appellant=s points, we
affirm the trial court=s judgment. 

PER CURIAM

PANEL F: 
CAYCE, C.J., HOLMAN and GARDNER, JJ.

DO NOT PUBLISH        

Tex. R. App. P. 47.2(b)

DELIVERED: 
MARCH 15, 2007











[1]See Tex. R. App. P. 47.4.





[2]See
Watson v. State, 204 S.W.3d 404, 414-15, 417 (Tex. Crim. App.
2006) (setting out the factual sufficiency standard of review); Ross v.
State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004) (setting out the legal
sufficiency standard of review).





[3]See Tex. Penal Code Ann. ''
21.11, 22.021 (Vernon 2006) (providing the elements for aggravated sexual
assault and indecency with a child).





[4]See
Villalon v. State, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990).





[5]Tear
v. State, 74 S.W.3d 555, 560 (Tex. App.CDallas
2002, pet. ref'd), cert. denied, 538 U.S. 963 (2003).





[6]Id.; Kimberlin
v. State, 877 S.W.2d 828, 831 (Tex. App.CFort Worth 1994, pet. ref'd)
(citing Rodriguez v. State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991)).





[7]See
Hanks v. State, 137 S.W.3d 668, 671 (Tex. Crim. App. 2004); Cain
v. State, 958 S.W.2d 404, 407 n.5 (Tex. Crim. App. 1997) (both noting that
the jury is sole trier of facts and judge of credibility).





[8]Weatherred
v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).





[9]Id.





[10]Prystash
v. State, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999), cert.
denied, 529 U.S. 1102 (2000); Garza v. State, 996 S.W.2d 276, 280
(Tex. App.CDallas
1999, pet. ref'd).





[11]See Tex. R. Evid. 806 (providing the method
to impeach the credibility of a hearsay declarant).