02-12-046-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-12-00046-CR

 

 


 
 
 Glennie
 Darnell Jennings
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 371st District
 Court
  
 of
 Tarrant County (1236163D)
  
 December
 28, 2012
  
 Opinion
 by Chief Justice Livingston
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

 

SECOND DISTRICT COURT OF APPEALS 








 

 

 

 

By_________________________________

   
Chief Justice Terrie Livingston

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-12-00046-CR

 

 


 
 
 Glennie Darnell Jennings
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 371st
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          In
his only point, appellant Glennie Darnell Jennings argues that the evidence is
insufficient to support his conviction for indecency with a child by contact.[2] 
We affirm.

Background Facts

          In
2011, a grand jury indicted appellant with aggravated sexual assault of a
child.  Appellant’s indictment alleged that he had knowingly caused the
penetration of the female sexual organ of a child who was younger than fourteen
years old.  Appellant pled not guilty.  During the trial, appellant’s counsel
asked the trial court to include in the jury charge a question about indecency
with a child by contact as a lesser-included offense.[3] 
The trial court granted this request.  After hearing evidence and arguments
from the parties, the jury convicted appellant of indecency with a child by
contact.  The jury then listened to appellant testify in the punishment phase
of his trial and assessed seventeen years’ confinement.  The trial court sentenced
appellant accordingly, and he brought this appeal.

Evidentiary
Sufficiency

Appellant
contends only that the evidence is insufficient to support his conviction.  In our
due-process review of the sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Wise v. State, 364
S.W.3d 900, 903 (Tex. Crim. App. 2012).  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Blackman
v. State, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

To
obtain a conviction for indecency with a child by contact under the facts of
this case, the State was required to prove that with the intent to arouse or
gratify the sexual desire of any person, appellant touched any part of a
child’s genitals.  See Tex. Penal Code Ann. § 21.11(a)(1), (c)(1); Connell
v. State, 233 S.W.3d 460, 465–66 (Tex. App.—Fort Worth 2007, no pet.) (mem.
op.).  “A complainant’s testimony alone is sufficient to support a conviction
for indecency with a child.”  Connell, 233 S.W.3d at 466; see Bazanes
v. State, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref’d) (citing
Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978)). 
Also, “the jury is free to accept or reject any or all of the evidence of
either party, and any or all of the testimony of any witness.”  Franklin v.
State, 193 S.W.3d 616, 620 (Tex. App.—Fort Worth 2006, no pet.) (citing Hernandez
v. State, 161 S.W.3d 491, 500 (Tex. Crim. App. 2005)).

          The
record contains testimony from several witnesses, including the victim, supporting
the jury’s finding of appellant’s guilt.  Specifically, the evidence shows that
Erica and Kevin, who are married, have one child together, Quintessa, who was born
in April 2007 and was four years old during the trial.[4] 
In 2008, Erica, Kevin, and Quintessa lived in an Arlington apartment complex,
and appellant lived next door.  They all became friendly with each other; appellant
occasionally played games, watched television, and smoked marijuana with Erica
and Kevin, and appellant also developed a relationship with Quintessa, who referred
to him as her “grandfather.”[5]  According to Kevin,
appellant saw him, Erica, and Quintessa two to three times a week, and
appellant often gave Quintessa toys or candy.[6]  Erica, Kevin, and
Quintessa eventually moved to a different apartment, but they maintained
contact with appellant.  Appellant came over to the apartment only upon an
invitation.

          According
to Erica and Kevin, on the evening of November 3, 2010, appellant planned
to come to the apartment to play dominos.  Although Quintessa was normally
excited when appellant came over, according to Kevin, she was not happy about
his coming there that day.  In fact, Kevin testified that when Quintessa
learned that appellant was coming that evening, she “was pretty distraught.”  After
appellant arrived, Quintessa did not speak to him like she usually had.

          Later
on that night, according to Erica, Quintessa went to use the restroom and
stayed there for an extended period of time.  Erica stopped playing dominos to
check on Quintessa, and in the bathroom, Erica saw Quintessa “with her pants
down around her ankles trying to look at . . . her bottom
area.”  Erica asked Quintessa what was wrong, and Quintessa said that her “butt
hurt.”  While gesturing with her hands to her front genital area and her bottom,
Quintessa then told Erica that appellant had “put his finger in her pee and in
her butt.”  Erica called Kevin to the restroom, and Quintessa told him what she
had said to Erica.  Kevin was “beyond mad,” but Erica asked him to not confront
appellant with what Quintessa had said.  Kevin asked appellant to leave.  According
to Kevin, after appellant left, Kevin, Erica, and Quintessa cried together.

          Erica
testified that a couple of days later, she told Quintessa’s pediatrician, Dr.
Victor Diaz de Leon, about what had occurred.  Erica and Kevin each testified
that Quintessa also told Dr. Diaz de Leon about what she had previously said to
Erica and Kevin.  According to Erica and Kevin, Dr. Diaz de Leon told them to
take Quintessa to a children’s hospital, and they did so.

          Rebecca
Sullivan, a forensic nurse, testified that she met Quintessa at Cook Children’s
Medical Center on November 6, 2010.  Quintessa told Sullivan that appellant had
put “his finger in [Quintessa’s] butt and [her] pee,” and Quintessa later
clarified for Sullivan that her “pee” meant her genitalia.  Quintessa told
Sullivan that when appellant did this, Quintessa felt “nasty and not good.”  Sullivan
testified that she did not find anything unusual upon physically examining
Quintessa (such as signs of trauma on her hymen or anal region), but Sullivan
said that “most children that are sexually abused will have a normal exam.”  Sullivan
testified that based on statements made by some children in examinations, she
may believe that they have been coached, but that Quintessa’s statements to her
on the date of the examination did not raise any such “red flags.”

          Quintessa
later participated in an interview with a child forensic interviewer, Carrie
Paschall.  During the interview, which lasted nearly thirty minutes, Quintessa
was, according to Paschall, very active and chatty.  Quintessa provided several
“sensory details” about what had occurred with appellant, which signified to
Paschall that Quintessa could have been “reporting something from a memory . . . versus
parroting back something [she had] been told to repeat.”  Quintessa told
Paschall that appellant had touched her on the inside of her private part while
they were behind a couch and that this touching had hurt her.  Quintessa said to
Paschall that during this incident, her mother was cooking in the kitchen and
her father was cleaning.  Paschall did not sense “red flags” about Quintessa’s
truthfulness during the interview.[7]  Donna Hubbard, an
Arlington police detective, watched the interview, spoke to Erica, and prepared
appellant’s arrest warrant.  At trial, Quintessa testified that appellant had put
his finger on the outside of her “pee,” which was the place she used “[f]or
going potty.”

          Despite
these facts, appellant contends that the evidence is insufficient to support
his conviction because “virtually . . . all the essential
testimony was inconsistent with other testimony on the same subject.” 
Appellant also asserts that the evidence is insufficient because it shows that
he lacked access to Quintessa.  Essentially, appellant argues that the record
contains too many facts that are inconsistent with his guilt.

          It
is true that certain witnesses’ testimony produced inconsistencies, including
some contradictions that were seemingly only tangentially related to the issue
of appellant’s sexual contact with Quintessa.  It is also true that some evidence,
if given credence by the jury, could have weighed against a finding of guilt.  For
example, Quintessa told Paschall near the time of the offense that appellant had
touched her behind a couch, that the touching had hurt her, and that at the
time of the offense, her mother was cooking in the kitchen and her father was
cleaning.  At trial, however, Quintessa testified that it did not hurt when
appellant touched her and that while he was touching her, she was in a
bathroom, Erica was getting a drink, and Kevin was sitting in a chair.  Quintessa
also stated at one point in her testimony, contrary to Paschall’s account of
their conversation, that appellant did not touch her “butt.”  Quintessa
testified that appellant had touched her “pee” on the same night that she had told
her parents what had happened.  But Erica testified that the incident described
by Quintessa could not have happened on that night because Quintessa had been
“right next to [Erica] when [appellant] was there.”  Quintessa testified that Kevin,
Erica, and appellant did not smoke around her, but Erica said that she, Kevin,
and appellant smoked marijuana while Quintessa was in a play area that was
essentially in the same room that they were in.

          Detective
Hubbard, who had investigated close to a thousand cases concerning children,
testified that it is not uncommon for young children to change the details
about an offense a year or two years after the offense occurs.  Paschall, who
teaches courses on how to properly interview children, indicated that preschool
children can recall who committed an act and what happened but have more
difficulty recalling when the act occurred.  Although Paschall said that she
would expect a child’s memory of the details of an offense to fade over time,
she testified that she would not typically expect the location of the offense
to change.  She later testified, however, that “over a long period of time for
a young child, you would expect to see some inconsistencies in the details
surrounding the major event.”  Paschall also testified that it is possible that
a child could confuse where an offense occurred with where the child told
others about the offense.

          Cody
Adams, an Arlington police officer, testified that in November 2010, he
went to the children’s hospital to meet with Quintessa and her parents. 
According to Officer Adams, the parents, who were “heartbroken,” told him that
after Quintessa had told them about what had occurred with appellant, they went
back into the living room to finish their game of dominos.  When Erica
testified, she denied having finished the game, and she stated that she did not
remember telling Officer Adams that she had finished it.  Kevin also testified
that he did not remember making that statement.  Officer Adams conceded that
the parents’ statement that they “finished” the game could have meant only that
the game ended upon Quintessa’s outcry.

          Erica
testified that appellant had a hard time walking, was diabetic, and sometimes
needed help standing up.  Kevin testified, however, that although appellant did
not walk long distances, he “move[d] around a lot.”  Erica stated that “[f]or
the most part,” she was near Quintessa when appellant was near her, but Erica
also testified that there were times that she was not in the apartment while appellant
was near Quintessa.  According to Erica, most of the time when appellant came
to her apartment, he would simply go somewhere and sit down.  Also, Erica
testified that she would not have allowed appellant to go near the bathroom
while Quintessa was in there, and Kevin testified that appellant did not go to
the bathroom with Quintessa.  But at one point during the cross-examination of Kevin
by appellant’s counsel, the following exchange occurred:

          Q.  Let’s just cut to the chase on this.  If
your wife was cooking dinner in the kitchen and somebody had the guts to walk
into your house, pull your daughter’s pants and panties down, and digitally
penetrate her anally and vaginally behind that couch, somebody would have
known, right?

          A.  You said what?

          Q.  Somebody would have known, right?

          A.  No.  Like I said, obviously not.  If they
are behind the couch where I cannot see everything that’s going on, how can I
say for sure that he did not do anything.  I cannot say for sure he did not do
anything.

          Dr.
Diaz de Leon testified that his appointment with Quintessa in the first week of
November 2010 concerned coughing and a runny nose and that at the end of the
appointment, he was asked about what to do with a child that might have been
molested.  Dr. Diaz de Leon stated, however, that he did not remember hearing a
specific allegation of sexual abuse, and he said that if such an allegation had
been made, he would have documented it in his records.  Quintessa, Erica, and Kevin
each testified that Quintessa had told Dr. Diaz de Leon about what appellant
had done.

          In
her investigation, Detective Hubbard collected several pairs of panties that
Quintessa might have worn on the day of the offense, and she sent those panties
to the medical examiner’s office for a DNA analysis.  Constance Patton, a
forensic biologist, testified that she had examined four pairs of Quintessa’s panties
that Detective Hubbard had collected, that each pair contained the same male’s
DNA profile, and that none of them matched appellant’s DNA.  Patton said that
she had no opinion about which male’s DNA was on the panties or about how the
DNA got there.  On cross-examination by the State, Patton explained that the
exclusion of appellant’s DNA inside Quintessa’s panties did not negate the
possibility that he touched her sexual organ.  Patton testified that “the most
likely scenario [was] that [the male’s DNA] was from inadvertent contact from
someone.”  Kevin stated that he had helped Quintessa get dressed in mornings and
that he had therefore touched her panties.

          Finally,
appellant’s son, Phyllip Scott, testified that the allegations against
appellant were “completely ludicrous,” that he did not “have too many good
thoughts” about Erica and Kevin, that he never saw odd behavior between
appellant and Quintessa, and that he had never heard other allegations of
inappropriate sexual conduct by appellant.

          Although
the facts stated above could have caused a hypothetical jury to question the
credibility or weight of the evidence supporting appellant’s guilt, it is
evident that the jury in this case did not do so because it convicted
appellant.  See Castillo v. State, No. 08-08-00332-CR, 2010 WL
4117674, at *4 (Tex. App.—El Paso Oct. 20, 2010, no pet.) (not designated for
publication) (“In finding Appellant guilty of the charged offenses, the jury
implicitly resolved the conflicts [in the evidence] in favor of conviction.”); Denman
v. State, 193 S.W.3d 129, 132–33 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d) (holding that the jury’s conviction established its implicit rejection
of the defendant’s self-defense theory).  Rather, by convicting appellant, the
jury signaled that it believed enough of Quintessa’s outcry[8]
or her testimony that it resolved the critical issue in appellant’s case, which
was whether he touched her genitals, in favor of the State.[9]
 The jury was the sole judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Wise, 364 S.W.3d at
903.  In performing our evidentiary sufficiency review, therefore, we may not
re-evaluate the weight and credibility of the evidence and substitute our
judgment for that of the jury.  See Isassi v. State, 330 S.W.3d
633, 638 (Tex. Crim. App. 2010).  Instead, we must determine whether the
necessary inferences of appellant’s guilt are reasonable based upon the cumulative
force of the evidence when viewed in the light most favorable to the verdict.  See
Sorrells v. State, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011).  We must
presume that the jury resolved any conflicting inferences in favor of the verdict
and defer to that resolution.  Jackson, 443 U.S. at 326, 99 S. Ct.
at 2793; Wise, 364 S.W.3d at 903.

          Viewing
the evidence summarized above in the light most favorable to the verdict, deferring
to the jury’s implicit resolution of conflicts in the evidence, and
acknowledging that the jury was free to accept or reject any part of the
testimony of any witness, we hold that the jury could have rationally found the
essential elements of indecency with a child by contact beyond a reasonable
doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Wise,
364 S.W.3d at 903; cf. Chambers v. State, 805 S.W.2d 459, 461 (Tex.
Crim. App. 1991) (“The jury observed the complainant’s demeanor and was entitled
not only to reconcile any . . . conflicts, but even to
disbelieve her recantation.”).  Thus, we hold that the evidence is sufficient
to support appellant’s conviction, and we overrule appellant’s sole point.

Conclusion

          Having
overruled appellant’s point, we affirm the trial court’s judgment.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and WALKER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  December 28,
2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. § 21.11(a)(1) (West 2011).





[3]The court of criminal
appeals has held that “indecency with a child is a lesser-included offense of
aggravated sexual assault of a child when both offenses are predicated on the
same act.”  Evans v. State, 299 S.W.3d 138, 143 (Tex. Crim. App. 2009).





[4]To protect the identity of
the victim, we will refer to some of the witnesses by using pseudonyms.  See
McClendon v. State, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.]
1982).





[5]Erica said that appellant
never had duties to care for Quintessa or to potty train her, but she testified
that sometimes, appellant played with Quintessa, had her sit on his lap,
bounced her, and read her books.





[6]Erica testified that kids
often went to appellant’s apartment because he gave them toys and snacks.





[7]Paschall conceded at
trial, however, that there is no definitive way to determine whether a child is
truthful.





[8]Outcry evidence, even if
inconsistent with testimony at trial, has probative value in our evidentiary
sufficiency review.  See Rodriguez v. State, 819 S.W.2d 871, 873 (Tex.
Crim. App. 1991); Bermudez v. State, 878 S.W.2d 227, 229 (Tex.
App.—Corpus Christi 1994, no pet.); see also Kimberlin v. State, 877
S.W.2d 828, 831 (Tex. App.—Fort Worth 1994, pet. ref’d) (“A child victim’s
outcry statement alone can be sufficient to sustain a conviction . . . .”).





[9]Appellant does not contend
that there are facts in the record by which the jury could have found that he
touched Quintessa’s genitals without the intent to arouse or gratify someone’s
sexual desire.  See Tex. Penal Code Ann. § 21.11(a)(1), (c)(1).