NO. 07-09-00047-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 29, 2010

_____

MICHAEL LEE JENNINGS, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 19,694-A; HONORABLE HAL MINER, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant Michael Jennings appeals from his jury conviction of the offense of sexual assault[1] and his sentence of imprisonment for a term of five years and a $10,000 fine. The confinement and $8,000 of the fine were suspended in favor of probation for five years. Through three issues, appellant contends the evidence was insufficient to

_____

[1] *See* Tex. Penal Code Ann. § 22.011 (Vernon Supp. 2010). This is a second degree felony punishable by imprisonment for a term of not more than 20 years or less than 2 and a fine not to exceed $10,000. *See* Tex. Penal Code Ann. § 12.33 (Vernon 2003).

support his conviction and the trial court erred in admitting hearsay testimony. We will affirm.

## Background

Much of the evidence showing the events leading to appellant's prosecution is undisputed. Appellant arranged for another man, Richard Hughes, to engage in sexual contact with appellant's wife, in their bedroom and in appellant's presence. The contested issues involve her consent to the arrangement and the nature of appellant's actions.

Appellant and his wife were married in April 2002. Following the birth of their first child in 2003, the couple's sex life deteriorated, frustrating appellant. In November 2007, however, they learned she was pregnant with their second child. On December 15 of that year, with his wife's agreement, appellant bathed and blindfolded her before they engaged in oral sex and sexual intercourse without incident.

Then on the evening of December 22, appellant again set the same scene, starting with a bath for his wife and ending with her blindfolded on the bed in a nightgown. As his wife described the events for the jury, she felt someone approach the bed, move her nightgown up and spread her legs, and felt oral sex begin. It felt "different," and she believed something was "wrong." When she said "honey," appellant responded, "I'm right here," but his voice came from several feet away. She looked out from under the blindfold and saw one "figure" coming toward her and another moving away from her. Appellant laid down on the bed next to her, pulling her toward him. According to her testimony, she said, "that wasn't you." He said "yes, it was." She then

2

said "there's somebody else here." Appellant denied it. She took off her blindfold and saw a face reflected in the atrium window. Entering the bathroom and turning on the light, she found a man, Hughes, she did not know. She ordered Hughes out of her house.

Hughes testified at trial, under immunity, that an acquaintance named "Kat" approached him on an "adult friend finder" internet site about a week before December 22, concerning a "threesome." "Kat" put appellant and Hughes in contact and the two engaged in several computer conversations. Hughes agreed to the arrangement, agreed to wear certain clothing, and agreed not to speak when he was in the room. He arrived at the couple's home on December 22. Hughes waited outside for about thirty minutes and then saw appellant's signal. He went into the house and was led into the bedroom. The complainant was on the bed and appellant spread her legs apart with his hands. Hughes knelt down and began to perform oral sex on her. When she called out for appellant, he signaled Hughes to go into the bathroom. The complainant came into the bathroom a few minutes later and was "very riled," asked him who he was and vehemently told him to leave. Hughes testified appellant led him to believe the complainant had consented to the sexual activity. He said appellant did not tell him she was pregnant.

The jury also heard appellant's side of the story. He told the jury he and his wife had discussed having a "threesome" several times over the years and in December, she agreed. He entered an online chat room and located Hughes through an online

3

acquaintance, a woman named "Kat",[2] who was interested in having a "threesome" with the couple. They exchanged photographs and agreed on the date. He told Hughes what to wear, to wait outside until he turned the porch light on and off, and not to speak when he entered the house. He also testified that when Hughes performed oral sex on his wife, "she got cold feet" and that she "couldn't go through with it." Appellant admitted the complainant told Hughes to get out of the house and that she was very upset.

Appellant testified the couple remained together until January 2008 when his business failed. He also presented testimony showing his wife's normal behavior at Christmas events. It was not until February 1, 2008, that his wife reported the assault to police. Appellant was indicted and arrested that month, and filed for divorce in April 2008.

The indictment charged appellant with "then and there intentionally and knowingly caus[ing] the female sexual organ of [the complainant] to contact the mouth of [Hughes], without [the complainant's] consent." After his plea of not guilty, the case was tried to a jury.

---

[2] Appellant testified he met "Kat" online a few months before December 22. He never met her in person but testified she had "earned" his trust "[t]hrough [their] conversations."

Analysis

Sufficiency of the Evidence

In appellant's first two issues, he contends the evidence presented at trial was insufficient to support his conviction. Appellant argues the sexual activity that occurred on December 22 was consensual, and that his participation in the events cannot justify his conviction.

In reviewing issues of evidentiary sufficiency, an appellate court views the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found each element of the offense beyond a reasonable doubt. *Brooks v. State,* No. PD-0210-09, 2010 Tex.Crim.App. LEXIS 1240 (Tex.Crim.App. Oct. 6, 2010); *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003); *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001), *citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If, given all the evidence, a rational jury would necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95, *citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). All evidence, whether properly or improperly admitted, will be considered when reviewing the evidence for legal sufficiency. *Johnson v. State,* 967 S.W.2d 410, 411 (Tex.Crim.App. 1998).

5

Under Penal Code § 22.011(a)(1)(c),[3] a person commits an offense if he intentionally or knowingly "causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor." Section 22.011 contains definitions of conduct occurring without consent. The charge instructed the jury that the definition applicable here required the State to show appellant's wife did not consent to the sexual assault and was "unaware that the sexual assault is occurring." Tex. Penal Code Ann. § 22.011(b)(5) (Vernon Supp. 2010).

Appellant asserts the State sought to hold him responsible for the conduct of Hughes. He argues the evidence does not support a finding he was the primary actor; instead, the evidence shows he was "merely present" on the night of the assault. He argues also that because Hughes did not act with the requisite culpability and because appellant did not himself engage in non-consensual sexual contact with his wife, the evidence is insufficient to show him guilty of sexual assault. The argument misperceives the application of section 22.011(a)(1)(c) in this case.

The indictment charged appellant as the primary actor in the sexual assault of his wife. There was no allegation charging appellant as a party to the offense. The language of the statute contemplates the participation of a third party in sexual assaults. Section 22.011(a)(1)(C) criminalizes the intentional or knowing act of causing the sexual organ of another person, without that person's consent, to contact, inter alia, the mouth of another person, including the actor. The phrase "including the actor" makes clear that

_____

[3] Tex. Penal Code Ann. § 22.011(a)(1)(c) (Vernon Supp. 2010).

6

the defendant may, but need not be, the person whose mouth is caused to contact the sexual organ of another person. It is sufficient for guilt under § 22.011(a)(1)(C) that the defendant causes the unlawful contact.[4] Tex. Penal Code Ann. § 22.011 (Vernon Supp. 2010). Here, the actor was appellant, not Hughes. The State undertook to prove that appellant, as the actor, caused his wife's sexual organ to contact Hughes's mouth, without her consent. This is conduct proscribed by the statute.

Appellant relies on *Kimberlin v. State,* 877 S.W.2d 828 (Tex.App.–Fort Worth 1994, pet. ref'd), in which the court found the evidence legally insufficient to show the defendant had sexual contact with the victim. However, the indictment and court's charge in that case required contact between the defendant's mouth and the victim's sexual organ for conviction. *Id.* at 832. Appellant was not prosecuted for contacting his wife's sexual organ with his own mouth. We thus find *Kimberlin* distinguishable.[5]

As noted, under the court's charge, the State was required to prove also that appellant knew his wife was unaware that a sexual assault was occurring. See Tex. Penal Code Ann. § 22.011(b)(5) (Vernon Supp. 2010). The definition of lack of consent contained in § 22.011(b)(5) commonly has been applied in cases in which the victim was asleep when sexual contact was initiated. *See, e.g., Rodriguez v. State,* No. 13-06-00691-CR, 2008 Tex.App. LEXIS 9113 (Tex.App.—Corpus Christi December 4,

---

[4] Appellant does not challenge on appeal the sufficiency of the evidence he caused Hughes's sexual contact with his wife. See Tex. Penal Code Ann. § 6.04 (Vernon Supp. 2010).

[5] Appellant also cites *Brown v. State*, 716 S.W.2d 939 (Tex.Crim.App. 1986) and *Wooden v. State*, 101 S.W.3d 542 (Tex.App.—Fort Worth 2003, pet. ref'd). Both cases concern the law of parties. Neither is applicable here.

2008, no pet.); *Jezierski v. State,* No. 01-04-00755-CR, 2005 Tex.App. LEXIS 5475 (Tex.App.—Houston [1st Dist.] July 14, 2005, pet. ref'd) (mem. op., not designated for publication); *Cearley v. State,* No. 07-98-0109-CR, 1998 Tex.App. LEXIS 7861 (Tex.App.—Amarillo December 18, 1998, pet. ref'd) (mem. op., not designated for publication). In those cases, the sleeping victim did not consent to any sexual act and presumably initially was not aware any sexual contact was occurring.

As this court previously has noted, however, that a sexual assault victim becomes aware that an assault is occurring does not defeat the actor's guilt, because the assault already has occurred. *Espinoza v. State,* No. 07-04-0550-CR, 2005 Tex.App. LEXIS 3453 (Tex.App.—Amarillo May 5, 2005 no pet.) (mem. op. not designated for publication) (applying §§ 22.011(b)(5)). Here, it appears the blindfolded complainant realized very soon after Hughes began performing oral sex that the person contacting her was not her husband. She became aware at that time that a sexual assault was occurring. But, like in *Espinoza*, the offense was completed by then.

Appellant contends[6] it "is impossible to believe that the conduct which is the subject matter of this case occurred without [complainant's] knowledge or consent." He

---

[6] Briefs in this case were filed before issuance of the opinion in *Brooks,* No. PD-0210-09, 2010 Tex.Crim.App. LEXIS 1240. In appellant's brief, he states the issue challenging the evidence of lack of consent as one asserting factual insufficiency. His argument on that issue, however, concludes with the assertion he is entitled to an acquittal. An appellant is entitled to an acquittal only when the evidence of guilt is legally insufficient under the *Jackson v. Virginia* standard. *Jackson,* 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). To the extent that appellant intended an argument he was entitled to a new trial under the factual sufficiency standard applied before *Brooks*, we note that standard similarly required a reviewing court to defer to the jury's resolution of conflicting testimony. *Mosley v. State,* 983 S.W.2d 249, 254 (Tex.Crim.App. 1998); *Matchett v. State,* 941 S.W.2d 922, 936 (Tex.Crim.App. 1996).

8

points to her agreement that she and her husband had discussed involving a third person in their sexual activity, and the testimony that even after Hughes left their home the couple slept in the same bed, that family Christmas events occurred on December 23 and 24 without incident, and that the family continued to live together until January 24, 2008. He points out they shared a bed and engaged in sexual relations until their January 24 separation, and that his wife waited until February 1 to report the assault to police.[7] He further points to discrepancies in her reports of the assault. Appellant asserts that his wife reported the incident to gain leverage in their custody litigation.

The jury was free to believe the complainant's testimony she did not agree to participate in a "threesome," and did not consent to sexual activity with Hughes. The jury also heard the testimony of Hughes and complainant's friend, both of whom opined the complainant did not consent. The jury, being the sole judge of the facts and credibility of the witnesses, may believe or not believe a witness or any portion of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986)*; Rojas v. State*, 171 S.W.3d 442, 445-46 (Tex.App.-Houston [14th Dist.] 2005, pet.ref'd). *See also*

_____

We find that, viewing the evidence in a neutral light under that formerly-applied standard, the jury did not act irrationally by finding the wife's testimony about her consent credible, and finding beyond a reasonable doubt that she did not consent to the sexual contact with Hughes. *See Grotti v. State,* 273 S.W.3d 273, 283 (Tex.Crim.App. 2008); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006)*; Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006) (all applying former factual sufficiency standard).

[7] The complainant testified she and their child moved to her parents' home on January 24 after appellant threatened to kill his business partner and himself when his business failed. She called police that day to report her husband's threat and an officer came to their home to take the report. She did not mention the December 22 sexual assault to the officer, but told her parents. As noted, the assault was reported to police on February 1.

9

*Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). Viewing the evidence in a light most favorable to the verdict, we conclude that a rational jury could find beyond a reasonable doubt that the complainant did not consent to the sexual activity with Hughes and was unaware the sexual assault was occurring. *See Mauldin v. State,* No. 05-09-00513-CR, 2010 Tex.App. LEXIS 1862 (Tex.App.—Dallas March 17, 2010, pet. ref'd) (mem. op., not designated for publication); *Espinoza,* No. 07-04-0550-CR, 2005 Tex.App. LEXIS 3453. The evidence is sufficient to support appellant's conviction for the offense of sexual assault.

We overrule appellant's first two issues.

Admission of Testimony

In appellant's last issue, he complains of the trial court's admission, over his hearsay objection, of testimony from a friend of the complainant. She testified the complainant called her the night after the assault, December 23, and told her about the assault. She was "very stressed, very upset" and was crying. The friend testified the complainant told her she was afraid of a divorce and was "trying to keep it together so her daughter could have a normal Christmas . . . ." The friend saw the complainant a few days later, on December 26, and testified she was still visibly upset.

The trial court admitted the testimony as an excited utterance. *See* Tex. R. Evid. 803(2); *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003) (applying rule).

On appeal, the State argues the issue is not preserved for our review, and we must agree. After the trial court's ruling, the friend testified without further objection to

10

details of her telephone conversation with the complainant. Appellant also explored the conversation, and the complainant's emotional state during it, on cross examination. *See Lopez v. State,* 253 S.W.3d 680, 684 (Tex.Crim.App. 2008) (party must object each time inadmissible evidence is offered or obtain a running objection); *Valle v. State*, 109 S.W.3d 500, 509 (Tex.Crim.App. 2003) (error in admission of evidence cured where the same evidence comes in elsewhere without objection).  Accordingly, appellant's third issue is overruled.

Having overruled appellant's issues, we affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.